# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/06/2017, 11:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Benjamin J. Church
Church Law Office
Monticello, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of M.M. and N.H., Minor Children,

A.H. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

September 6, 2017

Court of Appeals Case No. 79A02-1704-JT-749

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

The Honorable Tricia L. Thompson, Magistrate

Trial Court Cause Nos. 79D03-1607-JT-69 79D03-1607-JT-70

**Najam, Judge.**

Statement of the Case

A.H. ("Mother") appeals the trial court's termination of her parental rights over her minor children M.M. and N.H. (collectively "the Children"). Mother raises a single issue for our review, namely, whether the State presented sufficient evidence to show that the termination of her parental rights was in the Children's best interests. We affirm.

## Facts and Procedural History

Mother and M.M., Sr. ("Father") were married and have two children together, M.M. and N.H.[1] On December 2, 2013, someone contacted the Indiana Department of Child Services ("DCS") to report that "Father was intoxicated and battered Mother." Appellant's App. Vol. 2 at 7. On December 19, DCS filed petitions alleging that the Children were children in need of services ("CHINS"). After Mother and Father failed to comply with services and demonstrated that they were unable to care for the Children, DCS filed petitions to terminate their parental rights.

Following a hearing, the trial court granted those petitions on March 1, 2017. In support of its order, the trial court entered the following findings and conclusions:

---

[1] Father's parental rights to the Children were also terminated, but he does not participate in this appeal. We note that Father never established his paternity of N.H., but he asserted that he was her biological father. It is unclear when Father and Mother were married and for how long.

3. Investigation revealed that law enforcement was called to the family home on November 29, 2013. Officers found Mother and the children outside without shoes or appropriate clothing for the weather. Mother was crying hysterically and the children were also crying. A large knife was visible inside the home. Mother told officers that Father came home intoxicated and battered her after accusing her of cheating on him. Father hit Mother multiple times in the head and face. This was witnessed by the children and [M.M.] attempted to get Father off of Mother. [M.M.] told investigators that both Mother and Father had knives during the altercation. Mother had visible injuries and Father was arrested. Mother indicated that Father had battered her a few months before that and was drinking on that occasion as well. Father admitted that he was an alcoholic and had treatment multiple times in the past. Father indicated that he sometimes blacks out when he is drinking. Father also had untreated mental health issues.

4. DCS filed a Verified Petition Alleging Children in Need of Services ("CHINS") on December 19, 2013, . . . at which time the children remained in the home. An Initial Hearing was held on December 30, 2013, and a CASA was appointed to represent the best interests of the children. An amended petition was filed on January 2, 2014.

5. The children were found to be Children in Need of Services ("CHINS") on February 3, 2014, after both parents admitted the allegations in the CHINS petition.

6. On March 24, 2015, a modification hearing was held and the children were placed in foster care. Father had moved out of the family home in January of 2015. Mother was unable to pay the rent with only her income. Mother and the children were evicted and Mother was unable to secure alternate housing. At the modification hearing, Mother and Father agreed the children needed to be placed in foster care as neither parent could provide

for the children. The children have never been returned to the care of either parent.

7. Pursuant to dispositional orders issued on February 3, 2014, Father was offered the following services: home based case management, mental health assessment and services, medication management assessment, substance abuse assessment and services, and establishment of paternity. Mother was offered the following services: home based case management, mental health assessment and services, and establishment of paternity. In September of 2014, the parents were ordered to participate in a domestic violence assessment and to submit budgets. These services were exhaustive and were designed to address the parents' difficulties. Evaluations revealed no barriers to the parents' ability to participate in services and achieve reunification.

8. Case conferences, family team meetings, and review hearings were held periodically. DCS and CASA prepared written reports and recommendations prior to each hearing.

9. A permanency hearing was held on September 1, 2016, at which time the permanent plan was determined to be initiation of proceedings for termination of parental rights and adoption. DCS filed its petitions, and evidentiary hearings on the Verified Petitions to Terminate Parental Rights were held on September 27, 2016, and December 6, 2016.

* * *

20. Mother also has a history of instability.

21. Mother struggles to maintain employment. Mother is often unemployed or employed for less than three (3) months at a time. During the CHINS case, Mother managed to maintain employment at Walmart for a little over one (1) year until losing that employment in June of 2016 due to being late and missing

work. Thereafter, Mother was unemployed for three (3) months until obtaining employment at Village Pantry just four (4) months prior to the termination hearing. Even when employed, Mother does not budget her income and spends money on impulse buys, cigarettes, and dating websites instead of necessities.

22. From December of 2013 until Father left the family residence in January of 2015, Mother and Father resided together with the children and changed residences approximately seven (7) times in the first fourteen (14) months of the CHINS case. Even though DCS assisted with deposits, rent, and/or utility bills in two (2) of those, the family was unable to maintain either residence on their own. Even when the family did have housing, there was very little furniture and the CASA for Kids Fund had to purchase beds for the children.

23. Since January of 2015, Mother has failed to maintain stable and suitable housing for the children. Mother spent a brief time at a shelter with the children but was refused re-admission due to her treatment of the children and failure to clean as requested. Mother went to Transitional Housing with the children but was evicted within twenty-four (24) hours after she violated the rules by "making out" with a male guest in front of the children. Mother and the children moved into the home of Maternal Grandmother for one (1) night but the home was so crowded that the children had to sleep on the kitchen floor.

24. After the children were removed from Mother's care, Mother continued to stay with Maternal Grandmother until November of 2015, when Mother obtained an apartment. Mother's electricity was disconnected in September of 2016 until being reconnected in her boyfriend's name. Even with income of Mother and her boyfriend, Mother was behind approximately $1500 in rent and $300 in utilities. Mother was evicted from the apartment on November 29, 2016. Thereafter, Mother planned to stay with her sister for one (1) week then move into another apartment with an

even higher rent of $795 per month. Even after three (3) years of services, Mother failed to grasp that she is unable to afford such rent.

25. When Mother did have independent housing, it was often dirty and unsuitable for the children. Mother failed to perform simple tasks such as laundry or removing trash. Mother failed to take action to remedy a roach infestation until visits in the home were suspended. After the conditions of the home improved and visits in the home resumed, Mother failed to maintain the improved conditions. On November 22, 2016, the home was again cluttered and dirty with roaches crawling on the walls and furniture during daylight. CASA, an entomologist at Purdue University, indicated that Mother had a large infestation of roaches and that it was likely the roaches would be transported to a new home if Mother moved.

26. Mother completed mental health, medication, and domestic violence assessments. Mother was diagnosed with Major Depression. Assessments recommended medication and individual therapy.

27. Mother failed to consistently take medication as prescribed. Mother stopped taking prescribed medication in December of 2014 and has not participated in medication management since March of 2015. Although Mother attended home-based case management sessions, Mother failed to actively participate and was resistant to recommendations. Even though Mother's participation improved after the children were removed, Mother still failed to follow through with daily living tasks as directed and ultimately lost Medicaid, food stamps, and TANF benefits for the family. Mother failed to apply for assistance with utilities and subsidized housing. Mother also failed to make appropriate childcare arrangements. Mother was discharged from several different providers for lack of participation.

28. Mother was very reluctant to initiate therapy. Mother missed multiple appointments and was discharged from therapy on May 30, 2014. Mother resumed therapy in August of 2015 and then abruptly stopped attending in January of 2016 resulting in another discharge in June of 2016 after several months of missed appointments. Mother thereafter failed to attend four (4) scheduled intake appointments for therapy with a new agency. Mother refuses to participate in therapy despite Mother's boyfriend's reported fear that Mother may hurt herself or their unborn baby.

29. Mother was found in contempt for failure to participate in services in July of 2014. Mother was also found in contempt a second time in August of 2015 for failing to remain drug free. Mother had used synthetic marijuana and was unable to account for $1400 of income.

30. At the onset of the CHINS case, the children remained in Mother's care despite an observed lack of structure and supervision. Mother was not open to parenting education or suggestions and was reluctant to discipline the children or impose consequences for poor behaviors. While Mother and the children were in the shelter, Mother yelled inappropriately at the children and had to be prompted to care for them.

31. After the children were removed, Mother attended and was prepared for most scheduled visits. Mother's ability to discipline the children improved and visits progressed to a semi-supervised level and then to overnight visits. During the overnight visits, Mother failed on multiple occasions to follow a safety plan developed due to [M.M.] inappropriately touching [N.H.]. On one occasion, Mother allowed [M.M., N.H.,] and other children to sleep in the same bed.

32. Mother's overnight visits were temporarily suspended in May of 2016 after Mother allowed a boyfriend, [T.M.], to move into the home. [T.M.] was the second boyfriend Mother had during

the CHINS case. Background checks on [T.M.] revealed a history of domestic violence, residential entry, public intoxication, and false informing. Overnight visits resumed after [T.M.] was approved to participate. However, overnight visits were again suspended after [T.M.] spanked [N.H.] with a belt, threw a walnut at [M.M.] which hit [M.M.] in the eye, and tied [N.H.]'s bike to a dog causing an injury to [N.H.] when the dog took off running. [T.M.] was also arrested for battery on a neighbor of his ex-girlfriend. Mother remained in a relationship with [T.M.] and believes it is appropriate for him to be around the children unsupervised. As a result, visits returned to a fully supervised level at a facility. Mother is currently pregnant by [T.M.]

33. When the children were in the family home, the parents struggled to provide necessary care for the children. The children often wore dirty clothes and had no socks or underwear. Mother was observed to throw away the children's clothes instead of washing them. At one point, [M.M.] only had two (2) pairs of pants and one (1) shirt that could be worn to school. The parents failed to schedule and attend medical appointments for the children and failed to ensure [M.M.] attended therapy appointments.

34. The children have been involved in a CHINS case for three (3) years and have been removed from the home for nearly two (2) years, the majority of [N.H.]'s life. Since removal, [M.M.] has attended and enjoyed play therapy. The children have been placed in a concurrent foster home since August of 2015 and are doing well in that home. The concurrent foster parents are able to identify the needs of the children and to meet those needs. The plan for the children is adoption by the concurrent foster parents.

35. CASA, John Obermeyer, supports termination of parental rights and [thinks] the plan of adoption by the concurrent foster parents [is] in the best interests of the child. CASA notes the lack

of progress made by the parents and safety concerns related to Mother's boyfriend. CASA believes that allowing parents additional time to address their issues would be harmful to the children.

36. Both parents love the children but neither has the ability to provide for the children's needs. Both parents are currently homeless, which is the reason for the children's removal. Father has made no real effort to be reunified with the children since he left the family home in January of 2015. Mother failed to maintain limited progress and has not demonstrated an ability to provide safe and suitable housing for the children. Mother started the CHINS case in a violent relationship and there are similar concerns with Mother's current boyfriend. It is not safe for the children to be in the care of either parent. All imaginable services have been offered and nothing is singularly different in today's circumstances since the time of removal. To continue the parent-child relationship[s] would be detrimental to the children. The children need permanency now.

CONCLUSIONS OF LAW

1. There is a reasonable probability the conditions that resulted in removal of the children from the parents' care or the reasons for continued placement outside the home will not be remedied. Despite nearly three (3) years of services, neither parent has improved their ability to provide for the needs of the children. Both parents are currently homeless and struggle to provide for their own needs. There is no reasonable probability that either parent can maintain stability for the children.

2. Continuation of the parent-child relationships poses a threat to the well-being of the children. The children need stability in life. The children need parents with whom the children can form a permanent and lasting bond and who will provide for the children's emotional, psychological, and physical wellbeing. The

children's well-being would be threatened by keeping the children in parent-child relationships with either parent.

3. DCS has a satisfactory plan of adoption for the care and treatment of the children following termination of parental rights. The children can be adopted and there is reason to believe an appropriate permanent home has or can be been found for the children as a sibling group.

4. For the foregoing reasons, it is in the best interests of [the Children] that the parental rights of [Mother and Father] be terminated.

*Id.* at 7-12. This appeal ensued.

# Discussion and Decision

[4] We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental

rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[5] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[6] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans.*

*denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[7]     Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[8]     Mother's challenge on appeal is very narrow. Mother only challenges the sufficiency of the evidence to show that termination is in the best interests of the Children. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't. of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same

will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Ofc. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and *the testimony of the service providers may support a finding that termination is in the child's best interests*." *In re A.K.*, 924 N.E.2d at 224 (emphasis added).

[9] Mother's contentions on appeal are summed up as follows:

> Mother has a strong bond with the children. She exercises her visitation, and has consistently expressed her desire to maintain her parental bond with them. Despite her repeated highs and lows during the underlying CHINS proceedings, her testimony at the termination hearing shows she is attempting to make progress for the benefit of herself and her children. The bond this family shares should not be severed when so firmly-rooted, and while Mother is still making efforts towards improvement.

> * * *

> While [Mother] has certainly undergone setbacks throughout this matter, she has expended effort to better herself, even until the hearing date. Her desire to become a better parent, coupled with the strong bond she shares with her children should preclude a finding that termination is in the children's best interest.

Appellant's Br. at 12-13. But Mother's contentions amount to a request that we reweigh the evidence, which we cannot do.

[10] John Obermeyer, the Court Appointed Special Advocate for the Children, testified that he believes that termination of Mother's parental rights is in the

Children's best interests. Likewise, the family case manager testified that adoption and termination of parental rights is in the Children's best interests. The totality of the evidence, including Mother's historical inability to provide a safe and stable home and her refusal to take advantage of the resources DCS provided her during the CHINS proceedings over the course of almost three years, supports the trial court's conclusion that termination of Mother's parental rights is in the Children's best interests. Thus, the trial court did not err when it terminated Mother's parental rights as to the Children.

[11] Affirmed.

Kirsch, J., and Brown, J., concur.